<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

FRANKIE BROUGHTON,

                Plaintiff,

v.

NANCY A. BERRYHILL,

                Defendant.

Case No.:  2:17-cv-02622 (PAZ)

**OPINION**

**APPEARANCES:**

FREDERICK MICHAEL FRIEDMAN
340 N. LANDSDOWNE AVE.
P.O. BOX 467
DREXEL HILL, PA 19026
      On behalf of Plaintiff

PATRICIA ANNE STEWART
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
PHILADELPHIA, PA  19123
      On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Frankie Broughton for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401,

et seq.) and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (42

U.S.C. §§ 1381, et seq.).  Plaintiff appeals from the final decision of the Administrative Law Judge

("ALJ") denying the applications; Defendant, the Commissioner of Social Security ("the

Commissioner"), opposes Plaintiff's appeal.[1]  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case in accordance with the following instructions.

## I.    PROCEDURAL HISTORY

On March 18, 2013, Plaintiff filed applications for DIB and SSI alleging a disability onset date of April 15, 2009.  (R. 242-54.)[2]  On May 1, 2013, the Commissioner determined that Plaintiff was not disabled and denied the applications.  (R. 115-26.)  Plaintiff filed for reconsideration, and his applications were again denied on October 1, 2013.  (R. 127-31.)  On November 19, 2014, an Administrative Law Judge held a hearing on Plaintiff's applications; Plaintiff was represented by counsel at the hearing.  (R. 30-57.)  On June 11, 2015, the ALJ held a second hearing during which Plaintiff was again represented by counsel.  (R. 58-70.)  On November 21, 2015, the ALJ issued a decision denying Plaintiff's applications.  (R. 10-29.)  On February 24, 2017, the Appeals Council denied Plaintiff's request for review (R. 1-6), thereby affirming the ALJ's decision as the "final" decision of the Commissioner.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.  On March 6, 2018, the Government Accountability Office stated that, as of November 17, 2017, Ms. Berryhill's status violated the Federal Vacancies Reform Act, which limits the time a position can be filled by an acting official and "[t]herefore Ms. Berryhill was not authorized to continue serving using the title of Acting Commissioner[.]"  *Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 Commissioner*, Social Security Administration, Government Accountability Office (Mar. 6, 2018).  However, Ms. Berryhill continues to functionally lead the Social Security Administration from her position of record as Deputy Commissioner of Operations.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the defendant in this suit.

[2] "R." refers to the continuous pagination of the administrative record.  *See* ECF No. 5.

On April 18, 2017, Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3).  ECF No. 1.  On June 29, 2018, the case was reassigned to the undersigned U.S. Magistrate Judge.  On July 6, 2018, Plaintiff consented to have the undersigned conduct all further proceedings in the case to disposition pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  ECF No. 14.[3]

## II.    LEGAL STANDARD

### A.    Standard of Review

This Court has the authority to conduct a plenary review of legal issues decided by the ALJ in reviewing applications for DIB and SSI.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence.  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion."  *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*,

---

[3] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision.  *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Coleman*, 2016 WL 4212102 at *3 (citing *Schonewolf*, 972 F. Supp. at 284-85) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978))).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984)). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

      **B.**      **<u>Standard for Awarding Benefits</u>**

Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for DIB or SSI based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. §§ 404.1505(a), 416.905(a).[4] An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Thus, an impairment can be established by objective medical evidence from an

---

[4] Although the standards for disability are the same for both DIB and SSI, these are separate government programs subject different qualification requirements.

acceptable medical source, but cannot be established by a statement of symptoms, a diagnosis, or a medical opinion. *Id*. §§ 404.1521, 416.921.

The process for determining an adult's claim for DIB or SSI involves a five-step sequential inquiry. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a).[5] The claimant bears the burden of proof at Steps One through Four. At Step Five, the burden shifts to the Commissioner. *Id*. §§ 404.1512, 416.912; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014). At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step. 20 C.F.R. §§ 404.1523(c), 416.923(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit. *Id*. §§ 404.1572(a) & (b), 416.972(a) & (b). If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). At this Step, the ALJ decides whether the claimant has a medically determinable impairment or a combination of such impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work activities. An impairment or combination of impairments is not severe if the claimant has a slight

---

[5] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. §§ 404.1527 and 416.927.

abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *Id*. §§ 404.1522, 416.922. If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment(s) in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's specific impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence. *Id*. §§ 404.1526(b)(2), 416.926(b)(2). If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. §§ 404.1509, 416.909.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) either within the last 15 years or within 15 years prior to the disability date. In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *Id*. §§ 404.1560, 404.1565, 416.945, 416.960. If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms result in exertional and/or non-exertional limitations.  The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id*. §§ 404.1569a(a) & (b), 416.969a(b).  Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id*. at §§ 404.1569a(c), 416.969a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2.  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  The Grid Rules reflect various combinations of RFC, age, education, and work experience and direct a finding of disabled or not disabled for each combination.  If the claimant also has any non-exertional limitations or cannot perform substantially all the exertional demands at a given level, then the Grid Rules are used as a framework for decision-making unless there is a rule that directs a conclusion of disabled without

considering the additional non-exertional or exertional limitations. *Id.* §§ 404.1569a(d), 416.969a(d). If the claimant has solely non-exertional limitations, then the Grid Rules provide a framework for decision-making. *Id.* §§ 404.1569a(c), 416.969a(c).

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was fifty-one years old on his alleged onset date (April 15, 2009). (R. 23.)[6] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. 15.) At Step Two, the ALJ found that Plaintiff had the following severe impairments: hypertension, chronic low back pain, a history of arthritis, affective disorders, and anxiety. (R. 15.) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments severe enough to meet or medically equal the severity of any Listing. (R. 16.) At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform "the exertional demands of a range of medium work" subject to various exertional and non-exertional limitations. (R. 17.) The ALJ also found at Step Four that Plaintiff was unable to perform his past relevant work as a tractor-trailer driver. (R. 23.) At Step Five, the ALJ found that a finding of not disabled would be directed by the Grid Rules if Plaintiff had the RFC to perform the full range of medium work. The ALJ also found at Step Five that certain jobs – hand packager, package sealer, and staple machine operator – existed in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (R. 24-25.) The ALJ therefore concluded that Plaintiff was not disabled at any time between the alleged onset date and September 21, 2015 (decision date). (R. 24.)

---

[6] By letter to the ALJ dated June 4, 2015, Plaintiff's former counsel advised that Plaintiff "wishes to amend his alleged onset date to March 1, 2013." (R. 267 (noting that "[t]he claimant is fully aware of the consequences of this action").) The Court will nevertheless conduct its review using Plaintiff's initial alleged onset date of April 15, 2009 because that date is referenced in both the ALJ's decision and Plaintiff's brief.

Plaintiff contends that the ALJ's decision was not support by substantial evidence for three reasons. First, Plaintiff argues that the RFC determination at Step Four was based on the ALJ's erroneous assessment of the medical opinions provided by two treating providers and two non-treating providers. *See* ECF No. 11 at 21-23, 26-31. Second, Plaintiff argues that the ALJ erred at Step Five "by failing to make a finding as to whether the medium occupational base had been 'significantly reduced' before denying benefits." *Id.* at 23-25. Third, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility as to his subjective symptoms. *Id.* at 33-34. Defendant contends that the decision should be affirmed in its entirety both because Plaintiff does not meet the standards for introducing additional evidence and because substantial evidence supported the ALJ's decision.

## IV.    SUMMARY OF RELEVANT EVIDENCE

### A.    <u>Medical Evidence.</u>

Plaintiff served in the United States Navy from 1975 to 1977 and receives medical care from the East Orange Campus of the VA New Jersey Health Care System ("VA"), which is part of the Veterans Healthcare System provided by the U.S. Department of Veterans Affairs. Plaintiff submitted his VA medical records – over 1,700 pages – for the periods between April 2009— September 2014 (R. 369-1822, 1838-2097), and March—April 2015 (R. 2114-19) into the administrative record. Many of these records are duplicative and/or not presented in chronological order. The Court endeavors below to summarize the medical evidence that is most relevant to this appeal.

1.    **Physical Impairments.**

In April 2009, Plaintiff visited an ambulatory clinic for shoulder pain.  He was prescribed anti-inflammatory medication and instructed to follow-up with physical therapy.  The treatment notes indicated `1          that Plaintiff had a history of bilateral knee pain and that knee x-rays from 2007 revealed a large suprapatellar effusion.  (R. 576-80; *see* R. 971 (medical history summary referencing 2007 knee x-rays and diagnoses of bilateral knee arthritis and degenerative joint disease of the knees.)

In January 2010, x-rays of Plaintiff's right hip revealed mild to moderate osteoarthritis.  (R. 1304.)  In August 2010, Plaintiff visited an emergency room for right hip pain that started the previous day.  Plaintiff advised that he experienced similar flare-ups periodically over the past 7 years.  Hospital physicians diagnosed Plaintiff with right hip trochanteric bursitis, prescribed pain medication, and cleared him to return to work except for heavy lifting.  (R. 1602-32.)  In September 2010, Plaintiff was sent for a physical rehabilitation consultation.  Plaintiff denied low back pain, and explained that he suffered from right hip pain only during flare-ups.  He demonstrated zero degrees of internal rotation in his right hip compared to 30 degrees in his left hip, and no significant limited range of motion as to his lumbar back, knees, or ankles.  Plaintiff was prescribed 4 physical therapy sessions.  (R. 1338-42.)

Plaintiff asserts that "records from 2011 and 2012 are limited" but "evidence that Plaintiff's low back continued to cause him pain" during this period.  ECF No. 11 at 16.  As an example, Plaintiff highlights his visit to the ambulatory clinic on May 17, 2011 for low back pain.  *Id.* (citing (R. 1419)).  The Court notes that approximately one month later, on June 23, 2011, Plaintiff picked up a refill for Tramadol from the ambulatory clinic, stating that "this medicine helps him a lot with his hip pain" and that he "can function well with his current job which is landscaping and grass

cutting with this med." (R. 1415-16.) The Court has not identified – and neither party has cited – any medical evidence relating to Plaintiff's back, hip, or knee pain during the period between July 2011 and February 2013.

In March 2013, Plaintiff visited the ambulatory clinic for low back pain that started 3 days earlier. He was prescribed Acetominophen. (R. 1766-67.) In August 2013, Plaintiff went to the emergency room for low back pain rated 4 on a 10-point scale. His Ibuprofen prescription was refilled. (R. 2080-86.)

On September 9, 2013, Plaintiff saw Dr. Theresa H. Liao (internal medicine) for the first time. He advised that he was "trying to get SS disability" because he "can't deal with people," that he took Ibuprofen a couple of times each week for back and other aches, and that he had bottles of Lorazepam unopened at home because he "doesn't like meds" and only took them occasionally when he had to go out. (R. 2061-66.) Two weeks later, Plaintiff returned to Dr. Liao complaining of back pain that started 7 days earlier. He rated the pain at 7-8 on a 10 point scale and advised that he had never experienced such severe back pain before. Dr. Liao administered an intramuscular injection of Toradol. (R. 2054-59.)

On November 21, 2013, Plaintiff saw Dr. Liao for assistance with his disability paperwork. Dr. Liao's notes reflect in relevant part the following:

> main issue he reports is his depression/anxiety but also has chronic [low back pain] which is very bothersome. has knee [bilateral osteoarthritis] but the main physical prob is related to his back. has papers for his psychiatrist as well. he reports he is unable to stand or walk for any prolonged periods and completely unable to lift heavy things or carry/move them. he was last seen 9/23/13 when he came in after exacerbation of his back pain and required [intramuscular] Toradol here in office.

(R. 2040-45.) Dr. Liao proceeded to complete a Physical Capacities Evaluation. (R. 1823-26.) She diagnosed Plaintiff with anxiety/depression, chronic low back pain, and osteoarthritis-knees. She described his symptoms as pain rated 7-8 (on a 10-point scale) "brought on by standing,

bending, activity" and an inability to "lift/push/carry anything."  Dr. Liao opined that Plaintiff's symptoms were "often" severe enough to interfere with the attention and concentration required to perform simple work-related tasks.  She also opined that Plaintiff, during an 8-hour work day: could sit for 1-2 hours, stand for 1 hour, and walk for 1 hour; had no limitations with repetitive reaching, handling, and fingering; could never use his feet for repetitive movements such as operating foot controls; could occasionally lift/carry up to, but never more than, 10 pounds; could frequently reach above shoulder level; could occasionally bend or squat; could never crawl or climb; had mild restrictions in exposure to moving machinery, dust, fumes, gases, or marked changes in temperature or humidity; had moderate restrictions driving automobile equipment; and was totally restricted from exposure to unprotected heights.  Dr. Liao further opined that Plaintiff would need to take unscheduled breaks during an 8-hour work day "due to chronic back pain and also his anxiety symptoms."

In January 2014, Plaintiff saw Dr. Liao for low back pain rated 5-6 on a 10-point scale.  He advised that he had been in pain for 10 days and could not lay down for long without using a heating pad and stretching.  Plaintiff requested Percocet, as he had taken some prescribed to his sister and found they reduced his pain.  Physical examination findings included:  tenderness to palpation diffusely over the lumbosacral area; mild muscle spasm; negative bilateral straight leg raise; full range of motion; intact sensation; and symmetric reflexes.  Dr. Liao opined that opioids would not be the best course of action and instead prescribed Naproxen, Flexural, and physical therapy.  (R. 2027-32.)

Also in January 2014, Dr. Liao completed a Medical Source Statement (Physical) (R. 1831-34) that differed in several respects from the Physical Capacities Evaluation that she completed 2 months earlier (R. 1823-26).  She additionally diagnosed Plaintiff with hypertension and noted

that his only symptom was chronic intermittent low blood pressure.  Dr. Liao opined that Plaintiff's symptoms were "seldom" severe enough to interfere with the attention and concentration required to perform simple work-related tasks.  She also opined that:  during an 8-hour work day, Plaintiff could sit for 2 hours; stand for 4 hours; and walk for 4 hours, if permitted to alternate positions at least every 30-60 minutes.  She opined that Plaintiff's restriction in exposure to moving machinery was moderate.  Dr. Liao further opined that it was "unknown" how many unscheduled breaks Plaintiff would need during an 8-hour work day, and she noted that he might be unable to work during periods when his low back pain was exacerbated.  She deferred to Plaintiff's mental health provider based on a "suspicion" that Plaintiff's "mental illness may contribute significantly to his inability to work more than I have indicated."

In February 2014, Dr. Liao sent Plaintiff for a physical rehabilitation consultation.  Plaintiff advised the consulting physician that he experienced intermittent, non-radiating low back pain.  He rated his worst pain at 8 on a 10-point scale but advised that most of the time he did not have any pain if he used a heating pad.  Physical examination findings were unremarkable except for some tightness of the lumbar paraspinals on palpation.  X-rays of Plaintiff's lumbosacral spine revealed arthritis with facet joint disease.  Plaintiff was prescribed physical therapy for core strengthening, stretching, and range of motion. (R. 1838-39, 1961-68.)  In March 2014, Plaintiff advised Dr. Liao that his back pain was "fine," that he had stopped taking Naproxen and Flexeril, and that he "loved" attending yoga classes now that he was able to twist and move forward without any difficulty.  (R. 1948-54.)

In December 2014, Plaintiff was evaluated by consultative examiner Dr. Rahel Eyassu (internal medicine).  (R. 2098-109.)  Plaintiff stated that he had "arthritis with episodic pain, sometimes in his knee, sometimes in his shoulders."  His main complaint was localized, aching

low back pain that did not radiate and was not accompanied by any numbness or tingling sensations. The pain was exacerbated if Plaintiff stood for too long or walked for more than one hour. Plaintiff's stated medications included Lisinopril (Zestril), Lorazepam (Ativan), Methocarbamol (Robaxin), Ibuprofen, and Cholecalciferol (Vitamin D3). Physical examination findings included that: Plaintiff had normal gait and station; could squat and walk on his heels and toes; had full range of motion in upper and lower extremities and cervical spine; had some paralumbar spine muscle tenderness but no spasms noted; could forward flex about 60 degrees with full lateral flexion; had normal straight leg raising both supine and sitting; and had normal reflexes and strength. Dr. Eyassu also reviewed Plaintiff's February 2014 x-rays. Dr. Eyassu's impression was that Plaintiff suffered from chronic low back pain, history of arthritis, and hypertension. Dr. Eyassu opined that Plaintiff: could continuously lift/carry up to 20 pounds and occasionally lift between 21 and 50 pounds; could sit, stand, and walk up to 1 hour each without interruption for a total of up to 4 hours each in an 8-hour work day; had unlimited use of both hands; could continuously operate foot controls with both feet; could frequently climb stairs/ramps or balance; could occasionally stoop, kneel, crouch, or crawl; could continuously operate a motor vehicle; and could frequently experience exposure to unprotected heights, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, vibrations, or loud noises.

### 2. Mental Impairments.

In January 2010, Plaintiff underwent a mental health consultation and advised that he had low confidence about going to work because he has trouble keeping jobs. He was diagnosed with adjustment disorder with anxiety, and referred for therapy. (R. 1139-44.) In March 2010, Plaintiff began treatment with Dr. Antony P. Stephen (psychologist) and with Dr. Petru Ion Tintea (psychiatrist), who prescribed Lorazepam. In July 2011, Plaintiff was rejected from a VetCamp

program and blamed Dr. Stephen for sharing information about Plaintiff's drinking habits.  (R. 1373.)  Plaintiff terminated his relationship with Dr. Stephen, but continued his treatment with Dr. Tintea and participated in both individual and group therapy sessions through March 2015.  Dr. Tintea's treatment notes reflect that during this period Plaintiff was stable, calm, had good clinical control, and found his treatment beneficial.  (R. 701-05, 753-56, 1365-68, 1723-26, 1744-47, 1762-64, 1775-77, 1888-94, 1910-13, 1927-30, 1934-37, 1944-47, 1958-61, 2033-35, 2038-39, 2046-48, 2066-69, 2091-93, 2116-19.)

In December 2013, Dr. Tintea completed a Depressive Disorder Questionnaire.  (R. 1827-30.)  She diagnosed Plaintiff with a disturbance of mood accompanied by full or partial depressive syndrome.  Dr. Tintea opined that Plaintiff experienced moderate restriction in activities of daily living; marked difficulties in maintaining social functioning; marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and marked episodes of deterioration or decompensation in work or work-like settings which cause him to withdraw or experience exacerbation of symptoms.

In September 2014, Dr. Tintea completed a Mental Health Questionnaire.  (R. 1835-37.)  She again diagnosed Plaintiff with disturbance of mood accompanied by full or partial depressive syndrome, and she additionally diagnosed generalized persistent anxiety.  Dr. Tintea identified "severe depression" as the clinical findings demonstrating the severity of Plaintiff's mental impairments and symptoms, which began in 2011.  As to Plaintiff's functional limitations, Dr. Tintea offered the same opinion as in the Depressive Disorder Questionnaire, except that Plaintiff experienced moderate (changed from mild) restrictions in activities of daily living.  She additionally opined that Plaintiff was likely to be absent from work more than 4 days per month as a result of his mental impairments.

In January 2015, Plaintiff was evaluated by consultative examiner Dr. Kim Arrington (psychologist).    (R. 2110-13.)    Plaintiff reported dysphoric moods; fatigue; difficulty concentrating; isolating himself from others; irritability; severe agitation related to alcohol use; anxiety-related symptoms, such as excessive worry and nightmares; and panic attack symptoms, such as heart palpitations and sweating.  Plaintiff also stated that he was able to dress, bathe and groom himself; did both cooking and cleaning; was able to read and use basic computer skills; enjoyed fishing, watching television, and caring for his cat; could manage money; and could travel independently throughout his community.  Plaintiff's stated medications included Lorazepam (Ativan), Methocarbamol (Robaxin), Ibuprofen, Trazodone (Oleptro), Altorvastatin (Lipitor), and Hydrochlorothiazide (Microzide).  Dr. Arrington's examination findings included that Plaintiff exhibited:  a cooperative demeanor and adequate social skills; normal gait and posture, but restless motor behavior; good eye contact and fluent speech intelligibilty, but pressured voice quality; had coherent and goal directed thought processes; depressed affect and dysthymic mood; impaired concentration and an inability to do multiplication or division; mildly impaired recent and remote memory skills; and average intellectual functioning with fair insight and judgment.  Dr. Arrington's impression was that Plaintiff suffered from alcohol dependence; cannibis abuse; cocaine dependence, in remission; substance-induced mood disorder; and rule out generalized anxiety disorder.  Dr. Arrington opined that Plaintiff was able to follow and understand simple directions and instructions and to perform simple tasks independently; had difficulty maintaining attention and concentration; had difficulty learning new tasks and performing complex tasks; and could maintain a regular schedule.  She also opined that Plaintiff's difficulties – which appeared attributable to depression, anxiety, and substance abuse – may significantly interfere with

Plaintiff's ability to function on a daily basis.  Dr. Arrington recommended that Plaintiff enter

MICA treatment.[7]

### B.    Non-Medical Evidence.

The ALJ accurately summarized Plaintiff's Function Reports:

> In his function report from April 12, 2013, the claimant indicated that he had no
> trouble with personal care.  He prepares meals daily, does cleaning, and laundry.
> He stated that he tries to go out at least twice a week, but sometimes he is not
> motivated to do so.  He is able to travel by walking, riding in a car and using public
> transportation.  He is able to go out alone.  He shops in stores for groceries and
> clothing.  He takes care of pets – feeding and cleaning up after them.  Sometimes
> he goes for walks and visits the barbershop.  He also reads and watches television.
> His hobbies include fishing, cooking and television.  He visits and talks with others
> once or twice a week.  On a regular basis, he goes to the barbershop, library, and
> VA hospital.  He reported that he becomes anxious and nervous around people, but
> gets along with authority figures "pretty good."  He has a short attention span, but
> is "pretty good" at following written instructions.  He is not as good at following
> spoken instructions due to memory loss.  The claimant stated that he does not
> handle stress or changes in routine well [citing (R. 279-86)].
>
> A function report dated June 9, 2013, contained information similar to that in the
> claimant's April report with a few exceptions.  Regarding personal care, the
> claimant stated that he sometimes struggles with bathing, shaving, and hair care.
> He stated that he tries to get out and socialize because his social skills need help;
> he reported that he has trouble being around other people.  The claimant stated that
> his ability to follow written instructions was "fair" and with spoken instructions; he
> reported that he had trouble remembering what he heard [citing (R. 297-304)].

(R. 18.)[8]  The ALJ summarized Plaintiff's testimony from the initial hearing on November 19,

2014:

> At the hearing, the claimant testified that he is 57-years old.  He is a high school
> graduate; he was in the U.S. Navy for two and half years.  He last worked in 2009.
> The claimant alleged that he cannot work due to anxiety, and back and knee
> problems.  He went to the Veteran's Administration ("VA") hospital in 2009 for

---

[7] The State Agency reviewing consultants opined during 2013 in their initial review and on reconsideration
that Plaintiff demonstrated mild restriction in daily living activities and moderate restriction in both social
functioning and concentration, persistence, and pace.  (R. 71-88, 91-112.)  As the ALJ observed during the
initial hearing in November 2014, the State Agency reviewing consultants did not consider Plaintiff's
physical impairments.  (R. 33, 55.)

[8] The record also contains a Third Party Function Report dated June 9, 2013 that appears to have been
completed and signed by Plaintiff.  (R. 305-12.)

> physical problems. He sees a psychiatrist for anxiety and stress. He is also
> depressed. The claimant reported that he has had five injections in his back. He
> can walk for about three blocks and then his knees and back would hurt. He can
> stand for about one half hour. He can lift a gallon of milk. The claimant stated that
> he has problems sleeping. He has a past history of substance abuse, but has gone
> to rehabilitation. He is able to cook, do laundry and grocery shop. He does not
> have a driver's license. The claimant reported that he does not socialize a lot.

(R. 18.)

Plaintiff also testified that he could not use his feet and legs to operate a clutch or foot

pedals because the repetitive movement of his knees during the performance of those operations

caused discomfort. If required to stand for thirty minutes, Plaintiff would need something to lean

on. If required to sit for thirty minutes, Plaintiff would need to take at least 2-3 unscheduled breaks

in both the morning and afternoon, each lasting approximately 15 minutes, so that he could stretch

his knees and back from stiffening.

Plaintiff further testified that he had a history of getting hired, working 2-3 years, and then

losing his job because of concentration issues that triggered intense anxiety. (R. 34-55.) His Work

History Report (undated) indicates that he worked for 5 years as a resource clerk (1995- 2000), 4

months as a seasonal groundskeeper (2002), 6 years as a truck driver (2002-2008), and 1 month as

a shipping/receiving clerk (2009). Although Plaintiff testified that he last worked in 2009, his

Work History Report also indicates that he worked as a groundskeeper in a Controlled Work

Therapy ("CWT") program from February 2009 to June 2010. (R. 271.) Plaintiff's medical

records indicate that he had another CWT assignment as a groundskeeper working 4 days per week

for 14 weeks beginning in June 2010. (R. 1034.) The assignment was extended in September

2010 to 5 days per week and ended at some point before year-end. (R. 1562, 1582.) Plaintiff had

a third CWT assignment as a groundskeeper from April through June 2011 for which he was commended. (R. 1727.)[9]

## V.    DISCUSSION

Each of Plaintiff's contentions challenge the ALJ's RFC finding, which is reproduced below in its entirety:

> After careful consideration of the entire record, I find that the claimant is capable of the exertional demends of a range of medium work as defined under the Regulations; specifically, he is able to: lift/carry 50 lbs. occasionally and 20 lbs. frequently; stand/walk for a total of eight hours in an eight hour work day; sit for 4 hours in an eight hour work day; and perform unlimited pushing and pulling within the weight restriction given. Moreover, regarding the postural and environmental demands of work, I find that the claimant is able to perform jobs: that require only occasional use of ladders, ropes, or scaffolds; that require frequent (as opposed to unlimited) use of ramps or stairs; that require occasional balancing, stooping, kneeling, crouching, and/or crawling; and that require no exposure to dangerous machinery. Furthermore, as to the mental demands of work, I find that the claimant is able to perform jobs: that are simple and repetitive; that require only an occasional change in the work setting during the workday; and that require only occasional contact with supervisors, co-workers, or general public.

(R. 17.)

### A.    Step Four.

Plaintiff contends that the RFC finding was not supported by substantial evidence because the ALJ erroneously weighed certain opinions and/or failed to provide sufficient explanation for the ascribed weights. As to his physical impairments, Plaintiff argues that the ALJ erroneously ascribed "great" weight to Dr. Essayu's opinion and "little" weight to Dr. Liao's opinion. As to his mental impairments, Plaintiff argues that the ALJ erroneously ascribed "limited" weight to the opinions of Drs. Tintea and Arrington. The Court agrees, but only as to Drs. Essayu and Liao.

---

[9] On July 25, 2011, a VA vocational rehabilitation specialist advised Plaintiff that his former CWT supervisor was angry that Plaintiff had missed 4 days of his last week. Plaintiff explained that he stayed away because he was very upset that another veteran received an extension on the assignment instead of Plaintiff. (R 1374, 1414-418.)

A treating opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("[A]n ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."). This deference applies to opinions that reflect judgments about the nature and severity of a claimant's impairment, including the claimant's symptoms, diagnosis and prognosis, what s/he can still do despite impairment, and his/her physical or mental restrictions. 20 CFR §§ 404.1527(a), 416.927(a). An "opinion" that a claimant is simply unable to work thus can never be given controlling weight because that is an administrative finding reserved to the Commissioner. 20 CFR § 404.1527(d). When a treating opinion cannot be given controlling weight, it still may be entitled to some deference based on the ALJ's consideration of the following factors, which the ALJ must also consider as to non-treating and non-examining opinions: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source. 20 C.F.R. § 404.1527(c)(2)-(6); *see Plummer*, 186 F.3d at 429 (ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided").

### 1.    Physical Impairments.

The ALJ ascribed little weight to the opinion of treating physician Dr. Liao:

> The doctor reported that the claimant could perform only sedentary work and that he would need unscheduled breaks. The doctor also reported that at times, the claimant would be unable to work, but she did not report that he would be completely unable to work. She reported that his pain would often be severe

enough to interfere with attention and concentration, but this is contradicted by claimant's daily activities, including his abilities to fish, cook, read and watch television.  Moreover, the claimant has had limited treatment; as noted above, he admitted in 2014 that he had not had an exacerbation of pain since 2012.

(R. 21-22.)  By contrast, the ALJ ascribed great weight to the opinion of consultative examining physician Dr. Essayu:

> Although the claimant does have a history of significant impairment, the record does not establish that they are completely disabling.  The claimant has been treated for knee, shoulder, hip and back pain.  His shoulder pain resolved with medication.  He has only a limited history of treatment.  He does not use any assistive devices for ambulation.  I note the consultative examiner found the claimant could perform work at the medium exertional level.  I give this opinion great weight.  The doctor's physical examination was unremarkable with showing only some evidence of paralumbar spine muscle tenderness.  Moreover, the claimant reported to the doctors that he last experienced an exacerbation of pain and trouble walking two years prior to the December 2014 examination.  Moreover the doctor's opinion is consistent [with] the claimant's daily living activities as discussed below.

(R. 21.)

However, the two opinions are not significantly different.  Dr. Liao opined that – if permitted during an 8-hour day to alternate positions at least every 30-60 minutes – Plaintiff could sit for a total of 2 hours, stand for a total of 4 hours, and walk for a total of 4 hours.   Put another way, Dr. Liao opined that Plaintiff could sit, stand, and walk *each up to 30 or 60 minutes without interruption* for a total during an 8-hour day of *2 hours sitting, 4 hours standing, and 4 hours walking*.  Dr. Essayu similarly opined that Plaintiff could sit, stand, and walk *each up to 1 hour without interruption* for a total of during an 8-hour day of *4 hours sitting, 4 hours standing, and 4 hours walking*.[10]  Moreover, the decisional RFC – that Plaintiff can sit for 4 hours in an 8-hour day and "stand/walk for a total of [8] hours" – contains significantly fewer limitations than Dr.

---

[10] Contrary to Plaintiff's assertion, Dr. Essayu did not opine that Plaintiff could sit, stand, and walk *collectively* for 1 hour without interruption and for a total of 4 hours in an 8-hour day.  *See* ECF No. 11 at 21.

Essayu's opinion, to which the ALJ purportedly ascribed great weight.  For example, the decisional RFC does not include a limitation that allows for unscheduled interruptions to change positions, nor does it limit Plaintiff to 4 hours each for standing and walking.   The Court therefore is unable to review meaningfully whether the RFC finding as to Plaintiff's physical impairments was supported by substantial evidence because the ALJ's assessment of the opinions of Drs. Liao and Essayu were incomplete and contradictory.[11]

## 2.    Mental Impairments.

As to the opinions of treating physician Dr. Tintea and consultative examining physician Dr. Arrington, the ALJ found:

> Regarding the claimant['s] allegation of depression and anxiety, Dr. Tintea reported moderate to marked difficulty with activities of daily living, and marked difficulties in social functioning, concentration, persistence and pace.  However, I give her opinions little weight, as they are not supported by the medical evidence.  Similarly, I note that consultative examiner, Dr. Arrington, reported that the claimant might have trouble with maintaining attention and concentration.  The doctor also reported that the claimant's psychiatric problems might significantly interfere with his ability to function; however, she found that he was at least capable of perform[ing] simple tasks and would be able to maintain a regular schedule.  I give these limited weight.
>
> Despite the doctors' opinions, the most recent records show that the claimant had good clinical control and was satisfied with his medication and treatment.  I also note that despite his symptoms of anxiety and depression, the claimant has sought work and, at one point, was working to obtain his [HVAC] license.  The claimant reported that the drug Lorazepam calmed him down.  The mental examinations often showed memory and concentration were intact.  I also note that the claimant

---

[11] Plaintiff additionally contends that "[u]nderlying the ALJ's failure to properly analyze the medical source opinion is the ALJ's failure to make a step 2 finding" regarding Plaintiff's osteoarthritis of the knees.  ECF No. 11 at 30 & n.12.  The ALJ did not err at Step Two for two reasons.  First, the ALJ found that Plaintiff's severe impairments included a "history of arthritis."  (R. 15.)  Second, even if the ALJ had erred by not specifying at Step Two that Plaintiff's severe arthritis included the knees, any error was harmless because the ALJ nevertheless found in Plaintiff's favor at Step Two.  *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007).  Moreover, the ALJ did not run afoul of 20 C.F.R. §§ 404.1523(c) and 416.923(c) because she plainly considered Plaintiff's osteoarthritis of the knees at Step Four. (R. 19 (citing Dr. Liao's opinion that Plaintiff had osteoarthritis of the knees and Dr. Eyassu's opinion that Plaintiff complained of episodic knee pain due to arthritis).)

has been assessed with GAF scores as high as 68 and 75. Moreover, in his function report he stated that he was "pretty good" at following written instruction.

Additionally, the extent of the claimant's daily living activities, fails to support a complete inability to work and they contradict the findings of the above doctor regarding such severe limitations. According to the claimant's function reports, the claimant is able to travel by all forms of public transportation, and by walking. He has very little trouble with personal care. He shops for his needs in sores and takes care of his cat. He also likes to fish, read, and watch television. Despite his allegations that he is limited with written and spoken instructions, in my judgment his activities are not those of one who is completely disabled.

(R. 22.)

Plaintiff's sole argument for remand is the following:

With respect to Plaintiff's mental health, the records show that he has a history of difficulty maintaining employment – he testified that he never held a job for more than a couple of years, and that as his anxiety intensified, he found that he was able to maintain gainful employment for shorter and shorter periods of time. He regularly attended individual and group therapy over a period of at least four years in an attempt to overcome his anxiety and depression. But his anxiety over the sufficiency of his performance is simply debilitating.

ECF No. 11 at 29. However, Plaintiff's Work History Report belies his testimony, because he held a single position for 5 years and another position for 6 years over a 14-year period. He also temporarily worked three different CWT assignments and received excellent reviews. The record evidence cited in the ALJ's decision supported the decisional RFC (i.e., that Plaintiff can perform simple and repetitive jobs that require only an occasional change in the work setting during the workday and only occasional contact with supervisors, co-workers, or general public). The Court therefore finds that substantial evidence supported the RFC finding as to Plaintiff's mental impairments because there was no reversible error in the ALJ's assessment of the opinions of Drs. Tintea and Arrington.

25

### B.    Step Five.

The Court cannot meaningfully review the ALJ's Step Five findings because the decisional RFC was flawed.  The Court offers the following observations regarding Plaintiff's argument that, as to the decisional RFC, the ALJ's failure to follow Social Securing Ruling 83-12 – which provides guidance for cases where a claimant's exertional level falls between two Grid Rules directing opposite conclusions as to disability – was reversible error.  *See* SSR 83-12, *Titles II & SVI:  Capability to Do Other Work – The Medical-Vocational Rules As A Framework For Evaluating Exertional Limitations Within A Range Of Work Or Between Ranges Of Work*, 1983 WL 31253 (S.S.A. 1983).[12]  Plaintiff specifically argues:

> [T]he ALJ denied benefits based on jobs identified by the vocational expert as "medium" positions, [R]. 64 (hand packager, DOT 920.587.018; package sealer, 920.85-074; and staple machine operator, 692.685-202); however, the fact that the vocational expert was able to identify these jobs is not sufficient to meet the ALJ's burden to determine whether there has been a "significant reduction" in the medium occupational *base*.  The use of the word "reduction" plainly assumes *that there will be some jobs at the medium level that the claimant can perform.*  There was no testimony by the vocational expert, however, as to the degree to which the occupational base was reduced by the additional limitations contained in the ALJ's hypothetical.  This is clear error, which precludes meaningful judicial review.

---

[12] Social Security Ruling 83-10 explains that:

> A full range of medium work requires standing and walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the demands of frequent lifting and carrying objects weighing up to 25 pounds. … The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. … Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10, *Titles II and XVI: Determining Capability To Do Other Work – The Medical-Vocational Rules of Appendix 2*, 1983 WL 31251, at *__(S.S.A. 1983); *see* 20 CFR § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").  The decisional RFC – which, among other restrictions, limited Plaintiff to lifting/carrying 20 pounds frequently and stooping occasionally – fell between two exertional levels, medium and light.  Although a finding of not disabled would be directed by Grid Rule 203.15 if Plaintiff were limited to the full range of medium work, a finding of disabled would be directed by Grid Rule 202.06 if Plaintiff were limited to the full range of light work.

ECF No. 11 at 24-25 (emphasis in original). This argument both misapprehends Social Security Ruling 83-12 and misstates the ALJ's decision.

Under Social Security Ruling 83-12, an exertional capacity "that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of '[n]ot disabled.'" SSR 83-12, 1983 WL 31253, at *2. But "if the exertional capacity is significantly reduced …, it could indicate little more than the occupational base for the lower rule and could justify a finding of '[d]isabled.'" *Id.* And if the claimant's exertional limitations fall "somewhere 'in the middle,'" then the ALJ must make "more difficult judgments" as to the sufficiency of the remaining occupational base, and it is "advisable" to consult a vocational expert. *Id.* at *3; *see Martin v. Barnhart*, 240 F. App'x 941, 945 (3d Cir. 2007). To support a finding of not disabled, there must be evidence that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's vocational factors and RFC. *See* 20 CFR §§ 404.1560(c)(2), 416.966(b).

At Step Five, the ALJ found:

> If the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.15. However, the claimant's ability to perform all or substantially all of the requirements of medium work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and the residual functional capacity fashioned in this decision. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of the following representative occupations: hand packager (DOT#920.587-018) (150,000 such jobs available nationally); package sealer (DOT#920.685-074 (90,000 such jobs available nationally); and staple machine operator (DOT#692.685-202 (10,000 such jobs available nationally). I fully credit [the VE's] expert opinion. I find this to be a "significant number" of jobs. I find the vocational expert's testimony to be consistent with the Dictionary of Occupational Titles, as he so testified.

(R. 23-24 (citing Social Security Ruling 00-4p, *Titles II & XVI: Use of Vocational Expert And Vocational Specialist Evidence, And Other Reliable Occupational Information In Disability Decisions*, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000)); *see* R. 64 (ALJ testimony).) The ALJ appears to have done what Social Security Ruling 83.12 requires – namely, elicited VE testimony about the number of jobs that exist in the national economy for each of the three medium work level occupations that the VE opined Plaintiff would be able to perform notwithstanding that his RFC restricted him to less than the full range of limited work. *See Mercado v. Comm'r of Soc. Sec.*, No. 17-cv-4250 (JHR), 2018 WL 5818536, at *5-7 (D.N.J. Nov. 7, 2018) (rejecting virtually identical argument and affirming ALJ's decision to deny benefits where claimant's RFC range feel between light and sedentary work levels).

### C.    Plaintiff's Credibility.

"Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). The ALJ is required to assess the credibility of a claimant's subjective complaints using a two-step process. *See* 20 C.F.R. § 416.929. First, the ALJ must determine whether the record demonstrates that the claimant possesses a medically determinable impairment that could reasonably produce the alleged symptoms. Second, the ALJ must assess the credibility of the claimant's complaints regarding the intensity of the symptoms. To do this, the ALJ must determine if objective medical evidence alone supports the claimant's complaints; if not, the ALJ must consider other factors, including: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken by claimant to alleviate the pain; (5) treatment, other than

medication, the claimant receives or has received for relief of pain or other symptoms, (6) any other measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  The ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II & XVI:  Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an Individual's Statements*, 1996 WL 374186, at *4 (S.S.A. Jul. 2, 1996).[13]

After summarizing Plaintiff's subjective symptoms (*see* Section IV.B. above), the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but that Plaintiff's statements and testimony concerning the intensity, persistence and limiting effects of those symptoms were "not entirely credible for the reasons explained in this decision."  (R. 17-18.)  Plaintiff contends that the ALJ's credibility assessment was not supported by substantial evidence.  The Court partially agrees.

Plaintiff offers no support for his argument that the ALJ's credibility assessment was "generally deficient," relying instead on his attacks on the ALJ's RFC and Step Five findings.  *See* ECF No. 11 at 33 (explaining that "[t]he above arguments are, naturally, also attacks on the ALJ's credibility finding").  The ALJ's bases for discounting Plaintiff's subjective pain symptoms were identical to the bases for discounting the medical opinions provided in this case:  namely,

---

[13] Social Security Ruling 96-7p applies to SSA decisions that, like the ALJ decision in this case, were made prior to March 28, 2016.

inconsistencies with Plaintiff's medical record and daily living activities. For the reasons explained above, the Court finds that substantial evidence supported the ALJ's assessment of Plaintiff's subjective pain symptoms as to his mental impairments but not as to his physical impairments.

Plaintiff also argues that the ALJ's credibility assessment was "specifically" deficient because it "fail[ed] to acknowledge or discuss [P]laintiff's virtually uninterrupted 36 year work history." ECF No. 11 at 33 (explaining that "[f]rom 1974 through 2009, before Plaintiff became disabled, he earned quarters of coverage (albeit not always significant earnings) in virtually every quarter of every year, with five exceptions"). The Court agrees that a claimant's testimony "is entitled to substantial credibility" if the claimant has a lifetime record of continuous work. *Dombrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). The Court also agrees that the ALJ's decision did not discuss Plaintiff's work history before 2009. Although the ALJ should consider this evidence on remand, the Court notes that the substantial credibility afforded claimant's subjective complaints under *Dobrowolsky* does not require the ALJ to accept them as fact, because the ALJ still must "furnish explanations regarding the relative weight and credibility of the evidence that was before him." *Williams v. Sec'y of HHS*, No. 93-cv-3554 (JEI), 1994 WL 808124, at *7 (D.N.J. Nov. 18, 1994); *see Sanborn v. Comm'r of Soc. Sec.*, No. 14-cv-4103, 613 F. App'x 171, 176-77 (3d Cir. Jun. 1, 2015) (no reversible error where "ALJ's credibility determination was based on a broad view of the record and would have been supported by substantial evidence regardless of whether the ALJ had explicitly considered [claimant's] employment history").

## V.     CONCLUSION

For these reasons, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case to the Commissioner for further proceedings in accordance with the preceding instructions and the accompanying Order.

Dated:  March 1, 2019                              _____s/ Paul A. Zoss_____
At Newark, New Jersey                         PAUL A. ZOSS, U.S.M.J.